**BLOUNT COUNTY EDUCATION ASSOCIATION,**

v.

**BLOUNT COUNTY BOARD OF EDUCATION, et al.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Jan. 30, 2002.

Published Pursant to Rule 11 of the
Rules of the Court of Appeals
of Tennessee.

Richard L. Colbert, Nashville, Tennessee, for Appellant Blount County Education Association.

David R. Duggan, Maryville, Tennessee, and Henry Haile, Nashville, Tennessee, for Appellees Blount County Board of Education and William Gary Pack, Director of Blount County Schools.

Deborah Richardson Noe, Nashville, Tennessee, for Amicus Curiae Tennessee School Boards Association.

Charles W. Cagle, Nashville, Tennessee, for Amicus Curiae Tennessee Organization of School Superintendents.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and WILLIAM H. INMAN, Sr. J., joined.

This lawsuit arises from the unsuccessful attempt of the Blount County Education Association ("Plaintiff") and the Blount County Board of Education ("Board") to negotiate a new memorandum of agreement prior to the expiration of the existing agreement on July 1, 1999. Plaintiff claims certain subjects it sought to bargain over were mandatory subjects of bargaining and that the Board committed an unfair labor practice when it refused to bargain in good faith and thereafter unilaterally implemented changes after the agreement expired. The Board claims the subjects over which it refused to bargain were permissive subjects of bargaining, and, therefore, it had no duty to bargain over these subjects and was free to unilaterally implement changes once the agreement expired. The Board also filed a counter-claim asserting that Plaintiff committed an unfair labor practice by insisting the parties bargain over permissive subjects and conditioning an agreement on inclusion of these permissive subjects. The Trial Court held that the subjects of involuntary transfers, voluntary transfers, layoff, recall, non-discrimination, and the duration of the agreement were all permissive subjects of bargaining, dismissed the complaint, and granted the Board's coun-

ter-claim. We affirm in part, reverse in part, and remand.

### Background

Plaintiff filed its Complaint in this action in October of 1999. Plaintiff represents all certified employees of the Board of Education employed in the Blount County School System. Effective July 1, 1996, Plaintiff and the Board executed a memorandum of agreement after collective bargaining between the parties. The memorandum of agreement provided it was to remain in effect through June 30, 1999, "or until a successor agreement is in effect." The parties sharply dispute which items are mandatory subjects of bargaining and which are non-mandatory or permissive subjects as related to their unsuccessful attempt to negotiate a new agreement. Resolution of this issue will affect Plaintiff's claim that the Board failed to negotiate in good faith and prematurely declared the parties at an impasse, as well as the Board's counter-claim that Plaintiff acted unlawfully by insisting on bargaining with regard to permissive subjects. The final issue on appeal concerns the validity of the duration clause contained in the 1996 agreement.

According to the Complaint, prior to the expiration of the memorandum of agreement, Plaintiff sought to negotiate contract terms on several items which included: (1) retirement incentives [1]; (2) voluntary and involuntary transfer protection; (3) layoff and recall provisions; (4) sick leave days; (5) personal leave days; (6) sabbatical and educational leave days; (7) recuperation of health leave; (8) jury and legal leave; (9) fair treatment; (10) a guaranteed pass through of state funds for insurance; (11) non-discrimination; (12) seniority; (13) posting of vacancies; (14) size of classes; (15) teaching hours; (16) preparation time; (17) employee assignments; (18) employee safety; and (19) the duration of the agreement. The parties bargained over various proposals without much success towards reaching an accord on language to include in a successor memorandum of agreement. The parties eventually utilized the services of a mediator through the Federal Mediation and Conciliation Service and negotiated for fourteen sessions. When this proved unsuccessful, the Board declared an impasse had been reached and the existing contract would expire the following day on July 1, 1999. Thereafter, the Board began to implement its final offer on many of the various subjects.

Plaintiff filed suit seeking a declaratory judgment and asserting that the numerous subjects listed above were mandatory subjects of bargaining and the Board had not bargained in good faith on these topics. Plaintiff claimed since the Board had not bargained in good faith, no impasse could have been reached and, consequently, the Board was legally prohibited from unilaterally implementing its last offer on each of these subjects. In its Answer, the Board claimed these subjects were permissive rather than mandatory subjects of bargaining and it was under no legal obligation to bargain at all over these subjects. As to the duration clause, the Board claimed it refused to negotiate only on a proposed duration clause that would exceed the three year statutory limit found in Tenn.Code Ann. § 49-5-612(b). The Board also filed a counter-claim asserting that Plaintiff had committed an unfair labor practice by refusing to approve any new agreement unless it contained articles on the following permissive subjects: vol-

---

1. Although not entirely clear from the record, it appears that an agreement may have been reached on this subject.

untary transfers, involuntary transfers, layoff, recall, and non-discrimination. The Board also sought declaratory relief as to whether the duration clause in the 1996 agreement continued to bind the parties to the terms of that agreement in light of the language of Tenn.Code Ann. § 49–5–612(b), prohibiting the term of such a memorandum of agreement from exceeding three years.

The Board filed a motion for partial summary judgment claiming, as a matter of law, that the subjects of voluntary transfers, involuntary transfers, layoff, recall, non-discrimination, and the duration of the agreement were permissive subjects of bargaining and, therefore, the Board could not be held in violation of the law with regard to its bargaining (or lack thereof) on these topics. The central aspect of this argument essentially is that these various topics were not "working conditions" and, therefore, were not mandatory subjects of bargaining under the applicable statute. The Board also sought summary judgment with regard to the validity of the 1996 duration clause, which it claimed violated Tenn.Code Ann. § 49–5–612(b) and was invalid as a matter of law.

The Trial Court rendered a decision and concluded that the duration clause contained in the 1996 memorandum of agreement was in conflict with the three year maximum cap set forth in Tenn.Code Ann. § 49–5–612(b) and was invalid, and, therefore, the contract expired after June 30, 1999. The Trial Court went on to conclude as follows:

Giving the term *"working conditions"* its plain meaning, one readily concludes and the Court finds that the

term is descriptive of a proper condition for work or a state of being fit for work.[2]

Given the plain meaning of the words *"working conditions"*, the Court finds that the subject of voluntary transfers has nothing to do with the fitness of the workplace, that involuntary transfers have nothing to do with the fitness of the workplace, that lay-off and recall has nothing to do with the fitness of the workplace, that non-discrimination has nothing to do with the fitness of the workplace and the subject of duration has nothing to do with the fitness of the workplace. Accordingly, the Court is of the opinion and finds that all of these subjects[3] are not mandatory subjects of negotiations to be included in a no-nonsense interpretation of the term *"working conditions"*.

Out of an abundance of caution, even in light of the Court's finding above, the Court has gone further to consider whether the term *"working conditions"* (despite its plain meaning) ought properly to be interpreted to include all the things advocated by the Association according to the Legislative history of the enactment of this portion of the statute.

While the Court is of the opinion that there is no ambiguity in the plain meaning of the statute as adopted by the Legislature, the Court is authorized and is directed to resort to examination of the statutory scheme as a whole and to the Legislative history of the enactment of the statute in order to determine the meaning of the words enacted. It is appropriate for the Court to consider the statute's historical background, the conditions giving rise to the statute, and the circumstances contemporaneous with the statute's enactment....

2. Webster's New Collegiate Dictionary, Second Edition. (Footnote in original).

3. Voluntary transfers, involuntary transfers, lay-off and recall, non-discrimination and duration. (Footnote in original).

Reference is made to ... [the] Legislative history of the debates in both the House of Representatives for the State of Tennessee and in the Senate for the State of Tennessee about the very meaning of the phrase *"working conditions"*, all of which assures the Court that it was not the intent of the Legislature to have the term *"working conditions"* include anything other than its plain meaning.

Accordingly, the Court finds that the Board has not acted unlawfully or in bad faith by refusing to negotiate with the Association as to non-mandatory items.

Based on the foregoing, the Trial Court entered an order dismissing the portion of Plaintiff's complaint which claimed there was a refusal by the Board to negotiate mandatory subjects in good faith. The Trial Court also granted the counter-claim filed by the Board.

The Board then moved for summary judgment on "all remaining issues". The Board requested the Trial Court to rule that: (1) Plaintiff committed unlawful acts and acted in bad faith by insisting on negotiating non-mandatory subjects of bargaining and by indicating there would never be a contract unless these topics were included in the contract; (2) that the parties had reached an impasse in the negotiations of a successor agreement; and (3) since impasse had been reached, the Board was free to implement its final offers on the subjects. Plaintiff opposed the motion and, not to be outdone, filed its own motion for summary judgment on the "remaining issues". One of the arguments advanced by Plaintiff was that Tenn.Code Ann. § 49–5–611(b) provided the Board with its exclusive remedy if Plaintiff was insisting on bargaining over non-mandatory subjects. Plaintiff claimed that since the Board did not avail itself of this statutory remedy, it could not unilaterally imple-

ment its final offer on these subjects even if they were not mandatory subjects of bargaining.

The Trial Court granted the Board's motion for summary judgment on the "remaining issues", finding that Plaintiff had acted in bad faith when it insisted that the Board negotiate non-mandatory subjects and when it took the position that there never would be a contract between the parties unless the contract included these non-mandatory subjects. The Trial Court also found that an impasse had been reached which was brought about by Plaintiff's refusal to accept an agreement if it did not contain these non-mandatory subjects. The Trial Court then stated:

The Court further finds and concludes that because a *de facto* impasse had been brought about by the Association, and inasmuch as no negotiations were in progress, the Board could have brought suit against the Association, as suggested by Counsel for the Association, or the Board could, as it chose to do in this case, unilaterally institute portions of its final offer to the Association.

The Trial Court then entered judgment accordingly, and this appeal by Plaintiff followed. Plaintiff challenges the Trial Court's conclusion that voluntary transfers, involuntary transfers, layoff, recall, non-discrimination, and the duration of the agreement were not mandatory subjects of bargaining. Also challenged is the Trial Court's conclusion that the duration clause in the 1996 agreement was invalid, and that an impasse had been reached which enabled the Board to unilaterally implement its final offer on the these subjects.

### Discussion

The standard for review of a motion for summary judgment is set forth in *Staples v. CBL & Associates, Inc.,* 15 S.W.3d 83 (Tenn.2000):

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown,* 955 S.W.2d 49, 50–51 (Tenn.1997); *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn.1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.,* 857 S.W.2d 555, 559 (Tenn.1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.,* 811 S.W.2d 523, 524 (Tenn.1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall,* 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn.1998); *Robinson v. Omer,* 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden ·to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.,* 960 S.W.2d at 588; *Robinson v. Omer,* 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer,* 952 S.W.2d at 426; *Byrd v. Hall,* 847 S.W.2d at 210–11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995).

*Staples,* 15 S.W.3d at 88–89. A fact is "material" for summary judgment purposes, if it "must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Luther v. Compton,* 5 S.W.3d 635, 639 (Tenn.1999)(quoting *Byrd v. Hall,* 847 S.W.2d at 211).

We first address the Trial Court's conclusion that voluntary transfers, involuntary transfers, layoff, recall, non-discrimination, and the duration of the agreement are not "working conditions" and as such are not mandatory subjects of bargaining. Resolution of this issue involves statutory interpretation. "The role of the courts in construing statutes is to ascertain and give

effect to the legislative intent." *Cronin v. Howe*, 906 S.W.2d 910, 912 (Tenn.1995) (citing *Wilson v. Johnson County*, 879 S.W.2d 807, 809 (Tenn.1994)). "Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language." *Cronin*, 906 S.W.2d at 912. "A construction which places one statute in conflict with another must be avoided; therefore, we must resolve any possible conflict between statutes in favor of each other, so as to provide a harmonious operation of the laws." *Id.See also State By and Through Pierotti ex rel. Boone v. Sundquist*, 884 S.W.2d 438, 444 (Tenn.1994).

The Education Professional Negotiations Act ("Act" or "EPNA"), Tenn.Code Ann. § 49–5–601 *et seq.*, was passed with the stated purpose of prescribing the legitimate rights and obligations of boards of education and professional employees, and to establish procedures governing the relationship between these two entities. The statute further provides that:

It is the purpose and policy of this part, in order to protect the rights of individual employees in their relations with boards of education, and to protect the rights of the boards of education and the public in connection with employer-employee disputes affecting education, to recognize the rights of professional employees of boards of education to form, join and assist professional employee organizations to meet, confer, consult and negotiate with boards of education over matters relating to terms and conditions of professional service and other matters of mutual concern through representatives of their own choosing, to engage in other activities for the purpose of establishing, maintaining, protecting and improving educational standards, and to establish procedures which will facilitate and encourage amicable settlements of disputes.

Tenn.Code Ann. § 49–5–601(b)(3). Generally speaking, professional employees who fall within the coverage of the Act are given the right to self-organize (Tenn.Code Ann. § 49–5–603) and to select a bargaining representative of their choosing for the purpose of collective bargaining (Tenn. Code Ann. § 49–5–605). The Act also lists which conditions of employment must be negotiated in good faith, i.e., mandatory subjects of bargaining. The Act permits, but does not require, negotiation on other non-mandatory subjects not included within those actually listed, i.e., permissive subjects of bargaining. Specifically, the Act provides as follows:

**49–5–611. Scope of negotiations.**-(a) The board of education and the recognized professional employees' organization shall negotiate in good faith the following conditions of employment:

(1) Salaries or wages;

(2) Grievance procedures;

(3) Insurance;

(4) Fringe benefits, but not to include pensions or retirement programs of the Tennessee consolidated retirement system;

(5) Working conditions;

(6) Leave;

(7) Student discipline procedures; and

(8) Payroll deductions.

(b) Nothing shall prohibit the parties from agreeing to discuss other terms and conditions of employment in service, but it is not bad faith, as set forth in this part, to refuse to negotiate on any other terms and conditions. Either party may file a complaint in a court of record of any demands to meet on other terms and conditions and have an order of the

court requiring the other party to continue to meet in good faith on the required items of this section only....

The eight items listed above are the mandatory subjects of bargaining. The statute is clear that the parties are free to negotiate, or not, as they see fit with regard to any other non-mandatory terms and conditions of employment. Assuming the bargaining process is successful, the parties then are directed to prepare a memorandum of agreement and submit it to the appropriate governing authorities for approval. A memorandum of agreement, however, cannot include any terms which are contrary to federal law, state law, or any applicable municipal charter. In addition, they cannot be contrary to the rights of a board of education established in Title 49 of the Code, or contrary to the rights of professional employees as set forth in the Act itself. *See* Tenn.Code Ann. § 49–5–612.

The primary issue in this appeal is whether the subjects of voluntary transfers, involuntary transfers, layoff, recall, non-discrimination, and the duration of the agreement are properly designated as "working conditions" in accordance with Tenn.Code Ann. § 49–5–611(a)(5). The parties agree that these subjects do not fall into any of the other seven categories set forth in that statute. If they are "working conditions", they are mandatory subjects of bargaining, and along with that comes the attendant duty to bargain in good faith.

Plaintiff argues the term "working conditions" should be given an extremely broad meaning. Plaintiff claims this term should be interpreted to encompass, at a minimum, the following: length of the school day; number of hours spent in the classroom; when a teacher must be pres-

ent for work; amount of preparation time needed; the right to be treated fairly; the right to be free from discrimination; voluntary transfers; involuntary transfers; layoff and recalls; duration of the memorandum of agreement; seniority; posting of vacancies; class size; teaching load; employee assignments; guaranteed pass through of state funds for insurance; and safety. These, of course, would be in addition to the other seven mandatory subjects set forth in the statute.

The broad meaning of "working conditions" suggested by Plaintiff is very similar to the broad classification of mandatory subjects of bargaining contained within § 8(d) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(d). Section 8(d) of the NLRA obligates management and the union to "meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment...." As observed by the United States Supreme Court in *Ford Motor Co. v. NLRB*, 441 U.S. 488, 99 S.Ct. 1842, 60 L.Ed.2d 420 (1979), the original House bill contained a specific listing of issues subject to mandatory bargaining, but this attempt to "limit narrowly the subject matters appropriate for collective bargaining ... was rejected in conference in favor of the more general language adopted by the Senate and now appearing in § 8(d)." *Id.* at 495, 496, 99 S.Ct. at 1848.

If the Tennessee legislature had intended to give a broad meaning to "working conditions" and significantly expand what was considered a mandatory subject of bargaining, they certainly could have modeled the EPNA after the broad language found in Section 8(d) of the NLRA, which had been in existence for over 30 years at the time the EPNA was passed.[4] Instead,

4. The language found in Section 8(d) became law in 1947 when the National Labor Rela-

the Tennessee legislature did exactly what Congress eventually chose not to do, i.e., specifically list exactly which topics are mandatory subjects of bargaining. If we were to accept Plaintiff's invitation to define "working conditions" in such a broad scope, it would be difficult to envision what aspects of employment would not be considered a mandatory subject of bargaining. The broad interpretation suggested by Plaintiff would swallow the other seven subjects specifically identified as mandatory subjects by the legislature and would require us to conclude that the legislature's identifying of these other seven mandatory subjects was nothing less than an exercise in futility.[5]

Our opinion that "working conditions" should not be given Plaintiff's suggested broad interpretation is further supported by the fact that under federal law, mandatory subjects of bargaining are "wages, hours, and other *terms and conditions of employment*." (emphasis added). The Tennessee legislature, however, set forth only eight "conditions of employment" which are mandatory, but allowed the parties to permissively negotiate over "other terms and conditions of employment". Tenn.Code Ann. § 49–5–611. The language used by our legislature strongly indicates they did not intend to ascribe to the term "working conditions" the broad meaning suggested by Plaintiff.

■ As we do not believe the term "working conditions" is ambiguous, we are not compelled to explore the legislative history of the Act. We have done so, however, out of an abundance of caution due to the importance of the issues presented in this appeal. Our conclusion that the Tennessee legislature intended to define narrowly what are mandatory subjects of bargaining is supported by the legislative history. When discussing the amendment which set forth the eight specifically identified subjects of mandatory bargaining, Senator Sullivan stated as follows:

Mr. Speaker, gentlemen, Lady O'Brien, amendment number 12 is probably the second most important amendment that you will put on this bill today. I think it's a, a good amendment. It's an amendment that leaves some of the power with the board, like length of day, extra duties, overtime compensation, standards of employment and evaluation. This, this amendment, if this bill should pass, would limit those areas of negotiations to salaries and wages, grievance procedures, insurance, fringe benefits, working conditions, leave, student discipline, and payroll deduction.

Later during the discussions over the bill and its various amendments, Senator White observed that:

Certainly this bill is a weaker bill from the standpoint of the educational association. It really has three major changes

tions Act was amended by the Taft Hartley Act. *See Ford Motor Co. v. NLRB,* 441 U.S. 488, 495, 99 S.Ct. 1842, 1848, 60 L.Ed.2d 420 (1979).

**5.** Since we conclude that the Tennessee legislature did not intend to define broadly what are mandatory subjects of bargaining as was done by Congress with the NLRA, we do not consider federal case law discussing mandatory subjects of bargaining under the NLRA to be persuasive. *See Hamblen County Education Association v. Hamblen County Board*

*of Education,* 892 S.W.2d 428, 432 n. 8 (Tenn. Ct.App.1994) ("The parties recognize that the NLRB is not authoritative since it does not apply to states or their political subdivisions; but the Appellant argues that cases under the NLRB are instructive, if not persuasive. Because we believe that T.C.A. § 49–5–611(a) can be interpreted using principles of statutory construction well-established in this state, we see no need to explore precedent under the NLRB.").

and that's about it.... Let me just tell you what the changes are.... It sharply narrowed the scope on which the parties could negotiate. We've even more sharply, sharply narrowed it with the amendments....

We hold that the Tennessee legislature intended to provide a narrow list of specific subjects over which bargaining was mandatory. We, therefore, reject Plaintiff's invitation to define "working conditions" in a broad manner. Utilizing Webster's New Collegiate Dictionary, Second Edition, the Trial Court defined "working conditions" as being "descriptive of a proper condition for work or a state of being fit for work." We believe this definition is in accord with the legislative intent of the Act to narrowly define the subjects over which the parties are required to negotiate.

■ Utilizing the above definition of "working conditions", we agree with the Trial Court that voluntary transfers, involuntary transfers, layoff, and recall do not come within the scope of the term "working conditions" as these subjects do not involve a proper condition for work or a state of being fit for work. We affirm the Trial Court's conclusion that these four subjects are permissive subjects of bargaining under the Act.

■ We, however, do believe that a non-discrimination clause does involve a proper condition for work or state of being fit for work and is properly classified as a "working condition". Under several federal laws as well as the Tennessee Human Rights Act, Tenn.Code Ann. § 4–21–101 et seq., various forms of discrimination are prohibited, e.g., discrimination on the basis of age, sex, race, national origin, etc.[6] There

are, however, other categories of discrimination which are not prohibited by these laws and which could result in an employee being deemed not "fit for work" based on membership in a particular category. Examples would include residency requirements, marital status and sexual orientation, just to name a few. Accordingly, we hold that non-discrimination is a "working condition" and thus a mandatory subject of bargaining. The parties are required to negotiate in good faith on this topic, subject to the requirement of Tenn.Code Ann. § 49–5–612 that any agreement cannot violate federal, state, or municipal law.

■ Tenn.Code Ann. § 49–5–612(b) prohibits the term of a memorandum of agreement from exceeding three years. Because of this explicit directive, the parties cannot negotiate an agreement in excess of three years even if they so desire. In the present case, the 1996 memorandum of agreement provided that it would remain in effect for three years "or until a successor agreement is in effect." This quoted language is in direct violation of the statutory mandate because it operates to extend the agreement longer than three years. We agree with the Trial Court that the quoted language is null, void and of no legal effect.

■ Unfortunately, the record on appeal is unclear as to the length of any proposed duration clause(s) submitted by Plaintiff to the Board for negotiation. It also is unclear whether the Board refused to negotiate at all over the duration of the agreement or whether it simply refused to negotiate over a clause that would illegally extend the agreement in excess of three years. The duration of an agreement is not one of the eight listed mandatory sub-

---

**6.** This is not intended to be an all inclusive list as there are several other statutes which offer protection from discrimination. For example, the EPNA explicitly prohibits discrimination against employees for exercising their rights granted under the Act. See generally Tenn.Code Ann. § 49–5–609(a)(1).

jects of bargaining contained within the statute. The duration of the agreement, nevertheless, is so intertwined with the eight mandatory subjects that it must necessarily be considered a mandatory subject as well. It makes no sense to require negotiation on the eight mandatory subjects but give Plaintiff no bargaining power with regard to how long the term of the agreement on these mandatory subjects will be. To hold otherwise would require the Board to bargain in good faith on these eight topics, while at the same time giving the Board plenary power to decide the length of the agreement up to a term of three years. We hold that the duration of a memorandum of agreement (which cannot exceed three years) is a mandatory subject of bargaining.

■ We reject Plaintiff's argument that the bargaining history between the parties and whether the parties negotiated in the past over a particular subject impacts whether that particular subject is mandatory or permissive. The bargaining history of the parties cannot change the fact that the legislature specifically decided and identified which subjects are mandatory. Since the parties are free to negotiate over non-mandatory subjects, the fact that they have chosen to do so does not convert a permissive subject into a mandatory one. *See Hamblen County Education Association v. Hamblen County Board of Education*, 892 S.W.2d 428, 430 n. 5 (Tenn.Ct. App.1994)("The fact that the Board presented the program to the Association during negotiations does not necessarily indicate that the Board thought the matter was a subject which had to be negotiated under T.C.A. § 49–5–611(a). Subsection (b) of that statute recognizes that the parties are free to discuss 'other [non-mandatory] terms and conditions of employment in service' ").

■ Having determined which of the topics at issue are mandatory subjects of bargaining (i.e., non-discrimination and duration) and which are permissive subjects (i.e., voluntary transfers, involuntary transfers, layoff, and recall), we now turn to the legal effect of these classifications and the remaining issues on appeal. First, we address the mandatory subjects of bargaining. As set forth above, both Plaintiff and the Board are required to negotiate in good faith on all of the mandatory subjects of bargaining. *If* a legitimate impasse is reached on any one of these mandatory topics, then the Board can implement its final offer on that particular subject once the existing agreement has expired. The question then becomes whether or not an impasse was reached with regard to non-discrimination and the duration of the agreement.

■ In *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete, Co., Inc.*, 484 U.S. 539, 543 at n. 5, 108 S.Ct. 830, 833 at n. 5, 98 L.Ed.2d 936, 943 at n. 5 (1988), the United States Supreme Court offered this guidance:

The definition of an "impasse" is understandable enough—that point at which the parties have exhausted the prospects of concluding an agreement and further discussions would be fruitless—but its application can be difficult. Given the many factors commonly itemized by the [National Labor Relations] Board and courts in impasse cases, perhaps all that can be said with confidence is that an impasse is a "state of facts in which the parties, despite the best of faith, are simply deadlocked". The [National Labor Relations] Board and courts look to such matters as the number of meetings between the company and the union, the length of those meetings and the period of time that has transpired between the

start of negotiations and their breaking off. There is no magic number of meetings, hours or weeks which will reliably determine when an impasse has occurred.

In its memorandum opinion, the Trial Court in this case stated that the Board was seeking an adjudication that its admitted refusal to negotiate on the various subjects at issue did not constitute bad faith because they were not mandatory subjects of bargaining. In granting the Board's request, the Trial Court stated that "the Board has not acted unlawfully or in bad faith by *refusing* to negotiate with the Association as to non-mandatory items." (emphasis added). Since non-discrimination is a mandatory subject of bargaining and the Board refused to negotiate on this topic, it acted in violation of Tenn. Code Ann. § 49-5-609. The Board is hereby directed to cease and desist such behavior and to bargain in good faith with Plaintiff over this topic.

 With regard to the duration clause, the record in this case is altogether unclear as to what transpired, if anything, when the parties actually sat down and negotiated on this topic prior to and during the time they were assisted by the federal mediator. This is crucial information because the parties are required to negotiate in good faith over *each* mandatory subject. If an impasse is reached on one mandatory subject, this in no way excuses the legal obligation of Plaintiff or the Board to bargain in good faith over the remaining mandatory subjects. In other words, even if a legitimate impasse is reached on one mandatory subject, the Board cannot simply throw in the towel on the others and de-

clare an overall impasse. Likewise, if an impasse is reached on one mandatory subject, Plaintiff still is required to bargain in good faith over the remaining mandatory subjects. This does not mean that a true impasse cannot be reached on all of the mandatory subjects, but simply that there must be good faith bargaining on each one of these subjects. Because the record is incomplete on the details of the bargaining that actually did take place over the proposed terms of a duration clause, we must remand this case to the Trial Court for a factual determination as to whether the parties bargained in good faith on this subject and, if so, whether an impasse was actually reached. The Trial Court should consider, among other items which it may deem relevant, the number of meetings between Plaintiff and the Board, the length of these meetings, what actually transpired during these meetings, and the period of time that transpired between the start of negotiations and their breaking off.[7] If an impasse actually was reached on the duration clause, then the Board was free to unilaterally implement its last offer on this subject after expiration of the agreement. If no impasse as defined above was reached, then the Board was prohibited from unilaterally implementing its last offer.

 In the Trial Court and on appeal, the Board argued that Plaintiff committed unlawful acts by insisting on negotiating non-mandatory subjects and by indicating there would be no contract unless these topics were included in an agreement. Because non-discrimination and the duration of the agreement are mandatory subjects, Plaintiff had every right to insist on nego-

---

**7.** As discussed, *infra,* apparently there were other subjects on which Plaintiff claims the Board refused to negotiate in good faith and which will need to be resolved by the Trial Court on remand. If any of these subjects are determined to be mandatory, then the Trial Court will have to undertake this analysis for *each* of the mandatory subjects in order to determine if an impasse was reached.

tiating these subjects. We, therefore, reverse the Trial Court's conclusion that Plaintiff acted unlawfully by insisting that negotiations occur on these two subjects.

■ With regard to the subjects we have found to be permissive subjects, Plaintiff had no right to insist on bargaining and doing so is unlawful, and Plaintiff is directed to cease and desist such behavior. When a party to the negotiations insists on bargaining over a permissive term or conditions the success of the negotiations on inclusion of a permissive term, the other party "may file a complaint in a court of record of any demands to meet on other terms and conditions and have an order of the court requiring the other party to continue to meet in good faith on the required items of this section only." Tenn. Code Ann. § 49–5–611(b). Instead of utilizing this procedure, the Board apparently declared an overall impasse and began to unilaterally implement its final offer on the various subjects. This was improper with regard to the mandatory subjects of bargaining. If, as the Plaintiff did here, a party improperly demands negotiations or conditions a contract agreement on the inclusion of a permissive term, then the other party must seek declaratory relief in accordance with the statute. Once this relief is obtained, then the parties can return to the bargaining table and continue to negotiate over the mandatory subjects only. This does not authorize a party to declare impasse on one or all of the mandatory subjects because a fundamental prerequisite to reaching an impasse has not occurred, i.e., good faith bargaining. Indeed, there may have been *no* bargaining at all over one or more of the mandatory subjects, which appears to be the case herein. We hold that when a party improperly insists on bargaining over a permissive term or conditions the obtaining of an agreement on the inclusion of permissive terms, then that party has committed an unfair labor practice. The other party's remedy is to file a complaint seeking an order requiring the offending party to meet and bargain in good faith on the mandatory subjects. The statute in no way authorizes the non-offending party simply to declare an impasse and unilaterally implement policies on the mandatory subjects. At no time can a party declare an impasse on any of the mandatory subjects unless and until there has been good faith bargaining on the particular subject upon which impasse was declared and the parties are deadlocked on that subject despite good faith efforts to reach an agreement.

■ When a memorandum of agreement has been approved by the governing authorities and while it is in effect, neither party can unilaterally implement changes to the agreement regardless of whether the policy sought to be changed is mandatory or permissive. As discussed above, the duration clause in the present case is null and void to the extent it can be read to require the term of the agreement to exceed three years. The parties thus were bound to the terms of the agreement until it expired on July 1, 1999. Once the agreement expired, the Board nevertheless was required to maintain the status quo on the mandatory subjects until the parties negotiated in good faith and an impasse was reached on a particular mandatory subject. *See Smith County Education Ass'n v. Anderson,* 676 S.W.2d 328, 338 (Tenn.1984). *See also Union County Education Association v. Union County Board of Education,* No. 03A01–9904–CH–00122, 1999 WL 975115, 1999 Tenn.App. LEXIS 722 at *8 (Tenn.Ct.App. Oct.25, 1999) (no Rule 11 app. for perm. to appeal filed) ("Under the Education Professional Negotiations Act, the parties are required to bargain in good faith the following condi-

tions of employment: salaries or wages, grievance procedures, insurance, fringe benefits, working conditions, leave, student discipline procedures, and payroll deductions. T.C.A. § 49–5–611. While in the process of bargaining, one side may not unilaterally change the terms and conditions of employment without first reaching an impasse in the bargaining regarding that term or condition."). On remand, if the Trial Court determines there was not a legitimate impasse over the duration of the agreement, then any unilateral change, if any, on this subject by the Board after the contract expired would be unlawful. The same holds true for any other mandatory subject of bargaining.

■ With regard to permissive subjects, once the contract expired, the Board was no longer bound by the terms of the contract with regard to these subjects. To hold otherwise would require the Board to negotiate post-contract over permissive subjects which would, in turn, convert them into mandatory subjects. We, therefore, hold that the Board acted within its legal rights when it unilaterally implemented new policies on the permissive subjects of bargaining after the contract expired, i.e., voluntary transfers, involuntary transfers, layoff, and recall.

■ The Complaint alleges numerous other subjects over which Plaintiff complains the Board refused to negotiate in good faith. For some reason which we cannot identify based on the record, the Trial Court did not rule on whether these subjects were mandatory or permissive subjects of bargaining, but rather limited its ruling to those subjects discussed in detail throughout this Opinion. To the extent, if any, the parties did not reach an agreement on any of these other subjects and they are still at issue, the Trial Court on remand must determine whether these additional subjects are mandatory or per-

missive subjects of bargaining. For those subjects which it determines are mandatory, then a further determination must be made as to whether the parties bargained in good faith and, if necessary, whether or not an impasse was reached prior to any unilateral change by the Board. If no unilateral changes have been made by the Board and the status quo on a particular mandatory subject has been maintained, then further good faith bargaining must be ordered if no impasse was reached. For those subjects which are permissive, once the agreement expired, the Board was free to unilaterally implement any changes, which would include not having a policy at all on a particular permissive subject.

### Conclusion

The judgment of the Trial Court is affirmed in part and reversed in part, and this cause is remanded to the Trial Court for such further proceedings as may be required consistent with this Opinion. The costs on appeal are assessed one-half against the Appellant Blount County Education Association and its surety, and one-half against the Appellees Blount County Board of Education and William Gary Pack, Director of Blount County Schools.