IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 16, 2003 Session

# THE POLK COUNTY BOARD OF EDUCATION v. THE POLK COUNTY EDUCATION ASSOCIATION

**Direct Appeal from the Chancery Court for Polk County**
**No. C6885     Hon. Jerri S. Bryant, Chancellor**

**FILED JANUARY 16, 2004**

**No. E2003-01110-COA-R3-CV**

The Trial Court ruled the School Board did not have to negotiate with the Teachers Association regarding a dress code policy adopted by the Board. On appeal, we reverse and remand.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and WILLIAM H. INMAN, SR.J., joined.

Richard L. Colbert and W. Gregory Miller, Nashville, Tennessee, for Appellant.

D. Scott Bennett, Chattanooga, Tennessee, for Appellee.

## OPINION

This is the second appeal of the action filed by the Polk County Board of Education ("Board") seeking *inter alia* a declaratory judgment that it did not have to arbitrate a grievance filed by the Polk County Education Association ("PCEA") regarding a dress code policy promulgated by the Board. Prior to the first appeal, the Trial Court had held:

> The dress code does not constitute a condition of employment because of its impact on managerial prerogatives. The school board has an interest in seeing that its employees are appropriately dressed.

Regarding the dress code policy specifically, we said:

> The Trial Court concluded a dress code was a permissive subject of bargaining and since it was not covered by the Agreement, the Board had the authority to unilaterally implement the policy. The Trial Court further concluded a dress code was not a condition of employment because of its impact on managerial prerogatives.
>
> . . .
>
> When the Trial Court rendered its judgment, the Legislature had offered no express guidance on what was meant by the term "working conditions" as this term was not defined in the Act. On April 17, 2002, the Legislature passed 2002 Tenn. Pub. Acts 683, which became effective on May 1, 2002. With this amendment, the Legislature defined the term "working conditions" as "those fundamental matters that affect a professional employee financially or the employee's employment relationship with the board of education." Because the Trial Court did not have available to it this legislative guidance on what is meant by the term "working conditions", we vacate the judgment of the Trial Court that the dress code is not a working condition, and remand this case to allow the Trial Court the opportunity to determine whether the dress code is a working condition in light of the 2002 Tennessee Public Acts 683.

*Polk Co. Bd. of Educ. v. Polk Co. Educ. Assoc.*, 2002 WL 1357062 (Tenn. Ct. App. June 21, 2002).

Upon remand, both parties filed Motions for Summary Judgment, and the Trial Court found there were no facts in dispute and that implementation of a dress code was within the managerial prerogatives of the Board, and was not subject to mandatory negotiation. The Court found that it was the Board's prerogative to regulate the appearance of its employees, and to regulate the "medium through which the curriculum is delivered", and granted the Board's Motion for Summary Judgment.

In this appeal, the PCEA asserts that both the Memorandum of Agreement ("Agreement") executed by the parties and state law require arbitration.

The Board maintains that the issue regarding construction of the parties' Agreement was actually determined in the first appeal, since the issue was raised, and this Court remanded to the Trial Court with instructions to (only) consider the newly enacted legislation defining "working conditions" under Tenn. Code Ann. §49-5-601 *et seq*., thereby ruling by implication that the parties' Agreement would not require arbitration, and that now has become the law of the case.

The Board is correct in its assertion that this issue with regard to the parties' Agreement was raised before the Court in the first appeal, and dealt with the same parties and the same facts. The Board is correct that this Court rejected that argument by implication when it remanded the issue to the Trial Court solely for consideration of the newly enacted definition of

"working conditions" under EPNA.

There are no reported cases construing this newly enacted statutory provision. The definition of "working conditions" was added to the statute partially in response to this Court's decision in *Blount Co. Educ. Ass'n. v. Blount Co. Board of Educ.*, 78 S.W.3d 307 (Tenn. Ct. App. 2002), wherein this Court undertook to define "working conditions" as found in Tenn. Code Ann. §49-5-611 as "descriptive of a proper condition for work or a state of being fit for work". The statute was then amended to add the definition of "working conditions" as "those fundamental matters that affect a professional employee financially or the employee's employment relationship with the board of education." Tenn. Code Ann. §49-5-601.

Other states have struggled with the question of what constitutes "working conditions" as well regarding public employment and mandatory subjects of bargaining. Pennsylvania has recognized that a balance must exist between mandatory and non-mandatory subjects of bargaining, and that to be mandatory the issue must be "something more than minimal economic terms of wages and hours, but something less than the basic educational policies of the board of education." *Penn. Labor Relations Board v. State College Area School District*, 337 A.2d 262 (Pa. 1975). The Court also stated that the issues had to be resolved on a case-by-case basis, and remarked that the key to these cases was "how direct the impact of an issue is on the well-being of the individual teacher, as opposed to its effect on the operation of the school system as a whole." *Id.* The Court further stated:

> This problem would be simplified greatly if the phrase "conditions of employment" and its purported antithesis, educational policy, denoted two definite and distinct areas. Unfortunately, this is not the case. Many educational policy decisions make an impact on a teacher's conditions of employment and the converse is equally true. There is no unwavering line separating the two categories.

*Id.* at 268, n. 9 (quoting *West Hartford Educ. Ass'n. v. DeCourcy*, 195 A.2d 526 (Conn. 1972)).

Various tests have been adopted by other states to determine when an issue is a working condition subject to mandatory bargaining, one of which is the "rational relationship" test, which states that an issue is bargainable if it bears a rational relationship to the employee's duties - but where the managerial policy concerns substantially outweigh any impact the issue will have on employees, the issue is not bargainable. *Delaware County Lodge No. 27 v. Penn. Labor Relations Board*, 722 A.2d 1118 (Pa. Commw. Ct. 1998). A (similar) test is the "primary relation" test, which states that a mandatory subject of bargaining is one which "primarily" or "fundamentally" relates to wages, hours and conditions of employment. *City of Brookfield v. Wisc. Employment Relations Comm.*, 275 N.W.2d 723 (Wis. 1979). In other words, the policy's direct effect on employment conditions should outweigh the policy's effect in furthering the public policy considerations for the issue to be a subject of mandatory bargaining. *School District of Drummond v. Wisc. Employment Relations Comm.*, 352 N.W.2d 662 (Wis. Ct. App. 1984).

South Dakota employs a three-prong test, which states that a subject must be negotiated if the subject intimately and directly affects the work and welfare of public employees, the issue has not been preempted by statute or regulation, and the negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy. *Webster Educ. Ass'n. v. Webster School District #18-4*, 631 N.W.2d 202 (S.D. 2001).

The common theme in these tests, is that "the paramount concern must be the public interest in providing for the effective and efficient performance of the public service in question." *Penn. Labor Relations Board v. State College Area School District,* 337 A.2d 262 (Pa. 1975). Thus, the school board must be left with managerial prerogatives in determining policy issues and those issues which impact on the efficient operation of the school system. We have previously recognized this principle. *See Carter Co. Bd. of Educ. v. Carter Co. Educ. Ass'n.*, 1996 WL 251827 (Tenn. Ct. App. May 14, 1996) (perm. app. denied). However, this must be balanced with the employee's right to negotiate on the terms and conditions of employment.

As the Pennsylvania court and others have so aptly recognized, these issues must be resolved on a case-by-case basis, and do not lend themselves to "bright line" rulings. Considering the specific policy at issue in this case, which is the unilaterally imposed dress code,[1] it does not

_____

[1]The dress code adopted by the Board reads:

Based upon the recommendation of the Director's Advisory Committee, the following dress code was established for all instructional personnel both certified and non-certified:

No Shorts     Shorts are considered proper dress for Coaches and Physical Education teachers only when working in these areas of instruction. When teaching regular class, Coaches and Physical Education teacher must follow dress code.

Principal may give permission for teachers to wear shorts when they are involved in activities such as Field Day etc.

No Skorts

No Sweat Pants

Sweat Shirts may be worn when * "dressed-up."

Jeans may be worn as long as they are * "dressed-up."

Principals will deal with individuals when problems occur with the issue of professional dress.

appear that this particular policy so fundamentally affects the teacher financially that it would require mandatory bargaining, but it is unclear as to how this policy would effect the teacher's employment relationship with the Board, because there is nothing in the record to show how the dress code is to be enforced.

We conclude this particular dress code is not so restrictive or egregious as to require teachers to purchase new wardrobes, but it is unclear from the record what would happen to the teacher who did not or could not or would not comply with it, and this could very well fundamentally impact on the teacher's employment relationship. The dress code is silent as to how the policy is going to be implemented and enforced, and what the proposed penalty would be for non-compliance. As the legislature realized, and other states have recognized as well, the policy seeking to be implemented may be within managerial prerogative or be considered basic education policy, but its enforcement may still be a working condition which must be bargained. *See* Appendix to Reply Brief of Appellant, pg. 63; *see also Webster Educ. Ass'n. v. Webster School Dist. #18-4*, 631 N.W.2d 202 (S.D. 2001); *City of Brookfield v. Wisconsin Employment Relations Comm.,* 275 N.W.2d 723 (Wis. 1979).

Accordingly, we reverse the grant of summary judgment and direct that Judgment be entered declaring the proposed dress code policy as written falls within the statute as "working conditions".

The costs of the cause are assessed to the Polk County Board of Education.

_____
HERSCHEL PICKENS FRANKS, J.

---

Note:  *An example of "dressed-up" would be wearing a nice shirt or blouse with jeans or wearing a turtleneck or shirt with collar under a sweat shirt.