IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 7, 2007 Session


## CANNON COUNTY BOARD OF EDUCATION v. GOLDY WADE and CANNON COUNTY EDUCATION ASSOCIATION

Direct Appeal from the Chancery Court for Cannon County
No. 02-102   Hon. Robert E. Corlew, III., Judge

---

No. M2006-02001-COA-R3-CV - Filed July 31, 2008

---

Plaintiff's employment contract as a probationary teacher was not renewed. He filed a grievance under the agreement existing between the local board of education and the local professional employees' association. As the last step in the grievance procedure, the teacher sought binding arbitration. The board filed an action seeking a declaratory judgment that it was not required to arbitrate the former employee's grievance. The trial court dismissed that action, and on appeal this court reversed and remanded for further consideration by the trial court. The trial court then ruled that the issues raised by the teacher were subject to arbitration, and the board again appealed to this court. We hold that a locally negotiated agreement cannot be interpreted to delegate to an arbitrator the decision of whether to renew a probationary teacher's contract because state statutes clearly give that decision to local school officials. Consequently, we reverse the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which, HERSCHEL PICKENS FRANKS, P.J. and SHARON G. LEE, J., joined.

Charles W. Cagle, Samuel L. Jackson and Emily R. Ogden, Nashville, Tennessee, for Appellant, Cannon County Board of Education.

Richard L. Colbert and Courtney L. Wilbert, Nashville, Tennessee, for Appellees, Goldy Wade and the Cannon County Education Association.

**OPINION**

Goldy Wade ("Wade") was employed by the Cannon County Board of Education ("Board") for three school years, 1999-2000 through 2001-2002. When Wade was not rehired for the 2002-2003 school year he filed a grievance pursuant to a collective bargaining agreement entered into by the Board and Cannon County Education Association ("CCEA" or "Association") and, as the last step in the grievance process, sought arbitration. On October 14, 2002 the Board filed a complaint seeking declaratory judgment and injunctive relief. The Board sought a declaration that Wade's grievance was not arbitrable under the collective bargaining agreement and a temporary injunction prohibiting Wade from pursuing arbitration until a final judgment was rendered in the case. The CCEA then moved to intervene as a defendant, pursuant to Rule 24 of the Tennessee Rules of Civil Procedure, which was granted. Wade and the CCEA then filed a Motion to Dismiss, which the Chancellor granted, and the Board appealed.

This court held that it was unable to conclude that there was no set of facts the Board could present that would warrant the relief sought. *Cannon County Bd. of Educ. v. Wade*, 178 S.W.3d 725, 729 (Tenn. Ct. App. 2004). The case was remanded with a directive to the trial court: "If the trial court, in its discretion, determines that this is an appropriate case for summary judgment, then it should determine whether and under what conditions the School Board would be required to submit its decision not to renew Mr. Wade's contract to binding arbitration under the collective bargaining agreement." *Id.* at 730-731.[1] Additionally, the court articulated what it saw as the ultimate issue to be determined at trial: "[W]hether a non-tenured teacher, whose contract of employment for a specific term was not extended, is entitled to employ binding arbitration pursuant to step five of the grievance procedure to 'extend' the term of his employment contract beyond the term expressly provided in the individual contract." *Id.*

---

[1]Further, this court held that the collective bargaining agreement pertained to all teachers, including non-tenured teachers such as Wade, and supported this finding based on the lack of distinction in the agreement between tenured and non-tenured teachers and the provision in the agreement that all employees with certificates to teach were covered by the agreement. As Wade had a certificate to teach, the court reasoned that he was a third party beneficiary of the collective bargaining agreement, at least while he was employed. *Id.* at 729. Under the law of the case doctrine "an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal." *Watson's Carpet and Floor Covering, Inc. v. McCormick*, 247 S.W.3d 169, 181 (Tenn. Ct. App. 2007). Additionally, since our earlier opinion in this case, the Tennessee Supreme Court has found that the EPNA authorizes negotiations on behalf of "professional employees" and only such "professional employees," as defined in Tenn. Code Ann. § 49-5-603(11), are entitled to any "contractual protections emanating from the EPNA." *Lawrence County Educ. Ass'n v. Lawrence County Bd. of Educ.*, 244 S.W.3d 302, 316 (Tenn. 2007). "Professional employee" is defined as "any person employed by any local board of education in a position which requires a license issued by the department of education." Tenn. Code Ann. § 49-5-602(11). Because anyone employed to teach must have a license, Tenn. Code Ann. § 49-5-403(a), any reference to professional employees in the negotiated agreement would include certified non-tenured teachers like Mr. Wade.

-2-

Upon remand, the parties filed cross claims for summary judgment. The trial court granted the defendants' motion, denied the Board's motion, and ordered the Board to proceed with the arbitration of the grievance filed on behalf of Mr. Wade. The Board appealed.

## I. ISSUES AND STANDARD OF REVIEW

The ultimate issue in this appeal is whether the grievance filed by Wade pursuant to the locally negotiated agreement is arbitrable, or specifically, whether the Board can be compelled to submit the non-renewal of Mr. Wade's employment to binding arbitration. Resolution of that issue, however, requires a determination of whether certain decisions that, by statute, are the responsibility or duty of the local school officials can be delegated to an arbitrator. Stated another way, this case raises the question of whether a locally negotiated agreement, or any term thereof, can be interpreted or applied to limit statutorily created discretion of local school officials regarding the continued employment of probationary teachers by assigning ultimate decision-making authority to a third party who is not charged with responsibility for local school systems.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 307 (Tenn. 2008); *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005). We review the summary judgment decision as a question of law. *Chattanooga-Hamilton County Hosp. Auth. v. Bradley County*, 249 S.W.3d 361, 364 (Tenn. 2008); *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn.1998). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

The requirements for the grant of summary judgment are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 365; *Blair*, 130 S.W.3d at 764; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and we must afford that party all reasonable inferences. *Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d at 307; *Draper*, 181 S.W.3d at 288.

In resolving the appeal we are also called upon to construe and apply statutes, and we will apply standards that are equally well settled. Interpretation of statutes and their application to facts are questions of law. *Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 365; *Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d at 307; *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 74 (Tenn. 2002). Consequently, the presumption of correctness in Tenn. R. App. P. 13(d) does not apply, and we review the issues *de novo*. *Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 365; *King v. Pope*, 91 S.W.3d 314, 318 (Tenn. 2002). Since statutes define the authority of local boards of education and local directors of schools, the scope of a board's authority to contract is a question of law, subject to *de novo* review. *Arnwine v. Union County Bd.*

*of Educ.*, 120 S.W.3d 804, 806 (Tenn. 2003); *Heatherly v. Campbell County Bd. of Educ.*, No. E2004-02004-COA-R3-CV, 2005 WL 562752, *3 (Tenn. Ct. App. March 10, 2005).

The primary rule of statutory construction is to ascertain and give effect to the intent or purpose of the legislature in enacting the provision at issue. *In re C.K.G.*, 173 S.W.3d 714, 721-22 (Tenn. 2005); *City of Cookeville v. Humphrey*, 126 S.W.3d 897, 901 (Tenn. 2004); *LensCrafters, Inc. v. Sundquist*, 33 S.W.3d 772, 777 (Tenn. 2000); *Blount Co. Educ. Ass'n v. Blount Co. Bd. of Educ.*, 78 S.W.3d 307, 314-15 (Tenn. Ct. App. 2002), (stating that "the role of the courts in construing statutes is to ascertain and give effect to the legislative intent.") Courts must do so without unduly restricting or expanding a statute beyond its intended scope. *In re C.K.G.*, 173 S.W.3d at 721-22; *City of Cookville*, 126 S.W.3d at 901.

"Legislative intent and purpose is to be ascertained primarily from the natural and ordinary meaning of the language used." *Tuggle v. Allright Parking Sys., Inc.*, 922 S.W.2d 105, 107 (Tenn. 1996); *City of Cookville*, 126 S.W.3d at 901; *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000). We must examine any provision within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *Flemming*, 19 S.W.3d at 197; *Cohen v. Cohen*, 937 S.W.2d 823, 828 (Tenn. 1996); *T.R. Mills Contractors, Inc. v. WRH Enters.*, LLC, 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002). Additionally, where more than one statute is at issue, "A construction which places one statute in conflict with another must be avoided; therefore, we must resolve any possible conflict between the statutes in favor of each other, so as to provide a harmonious operation of laws." *Blount County Educ. Ass'n*, 78 S.W.3d at 314-15.

The parties herein have also framed some issues in terms of contract law. The question of interpretation of a contract is a question of law. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Therefore, the trial court's interpretation of a contractual document is not entitled to a presumption of correctness on appeal. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006); *Angus v. W. Heritage Ins. Co.*, 48 S.W.3d 728, 730 (Tenn. Ct. App. 2000). This court must review the document ourselves and make our own determination regarding its meaning and legal import. *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993).

## II. FACTUAL BACKGROUND

The essential facts are not in dispute. Mr. Wade was employed as a certified, non-tenured, probationary teacher in the Cannon County School System for three years. Wade was notified by the Board of the non-renewal of his contract prior to April 15, 2002 in compliance with the Continuing Contract Law, Tenn. Code Ann. § 49-5-409(b)(2). Wade and the CCEA then filed a grievance pursuant to the locally negotiated agreement (sometimes called the collective bargaining agreement) and asserted that the Board had violated three provisions of the Agreement. The specific provisions listed prohibit reprisals because of participation in a grievance; require fair treatment including notification of deficiencies and due process; and prohibit discrimination in the hiring, training, assignment, promotion, transfer or discipline of teachers on account of membership in the association, activities on behalf of the association or on the basis of race, creed, color, religion,

-4-

national origin, age, sex, domicile, marital status or physical handicap. On his grievance form, Mr. Wade identified the date of the alleged violation as "Receipt of non-renewal letter."

The locally negotiated agreement provided a grievance procedure, first defining "grievance" as "any written claim by an employee or employees that there has been a violation, misinterpretation, or misapplication of the terms of this agreement." The procedure has five steps. Step 4 is a review by the Board and requires that the Board hold a hearing if requested by the employee and render a decision in writing. The record does not contain a copy of the Board's written decision in Mr. Wade's grievance, but we must assume that the Board denied him relief since he proceeded to the next step. Step 5 of the grievance process is described in the agreement, in pertinent part, as follows:

> If the employee(s) is not satisfied with the disposition of the grievance at Step 4, the employee may petition the CCEA to request the Federal Mediation Conciliation Service to submit a panel of five (5) arbitrators who are specially qualified to hear public sector grievances. . . . If the services of the Federal Mediation Conciliation Service are not available, the parties shall request arbitration through the American Arbitration Association. . . .
>
> The arbitrator's decision will be in writing and will set forth his findings, reasonings, and conclusions on the issues submitted. The arbitrator will be without power or authority to make any decision which requires the commission of an act prohibited by law or which is violative of the terms of this agreement. The decision of the arbitrator shall be binding. The arbitrator shall have no power to alter, add to, or detract from the provisions of the agreement. . . .

### III. THE EDUCATION PROFESSIONAL NEGOTIATION ACT AND ARBITRATION

The locally negotiated agreement existing between the parties in this case was entered into pursuant to the Education Professional Negotiation Act, Tenn. Code Ann. § 49-5-601 *et. seq*. Part of that Act authorizes the inclusion of an agreement to arbitrate:

> A board of education and a recognized professional employees' organization who enter into an agreement covering the terms and conditions of professional service and/or other matters of mutual concern may include in such agreement procedures for final and binding arbitration of such disputes as may arise involving the interpretation, application or violation of such agreement.

Tenn. Code Ann. § 49-5-612(c).

The quoted provision does not further describe the procedures to be followed in any such "final and binding arbitration." Instead, it authorizes the parties to design and agree to the procedures they will use. Another provision in the EPNA defines arbitration as "the process of determination of disputed matters by submission to private unofficial persons selected for a purpose,

-5-

and in a manner consistent with this part."[2]  Tenn. Code Ann. § 49-5-602 (1).  Since Tennessee statutes on arbitration, including the Tennessee Arbitration Act, are inapplicable to arbitrations authorized under the EPNA, Tenn. Code Ann. § 49-5-602(1), neither the courts nor the parties can imply into an agreement under the EPNA arbitration procedures or rules found in state statutes.

The General Assembly has explicitly stated that "Arbitration under this part [the EPNA] is not governed by the provisions of title 29, chapter 5."  Tenn. Code Ann. § 49-5-602(1).  Title 29, chapter 5 contains the statutory provisions governing arbitration including, specifically, Tennessee's version of the Uniform Arbitration Act, Tenn. Code Ann. § 29-5-301 *et. seq*.  In addition to establishing various rules regarding procedure used in arbitration, that Act contains the provisions governing court enforcement of arbitration agreements and court modification or vacation of arbitration awards.  Tenn. Code Ann. §§ 29-5-303 and 29-5-312 to -315.  By express directive from the legislature, those statutory rules do not apply or govern the arbitration at issue in the case before us.

Because of that express directive, we find unpersuasive the Association's arguments that we must apply various approaches to interpretation of an agreement to arbitrate.  For example, the Association argues that we must resolve all doubts regarding the scope of an arbitration agreement in favor of arbitration based on the policy favoring arbitration as a means of resolving disputes.  However, the principle  the Association argues and the policy underlying it are established in cases interpreting and applying arbitration statutes, state or federal.  The cases cited by the Association are based on the Federal Arbitration Act or the Tennessee Arbitration Act.[3]  The Tennessee Act specifically does not apply to an agreement to arbitrate in a locally negotiated agreement between the local board and local professional employees' association,[4] and we know of no basis for application of the Federal Arbitration Act, and no party has asserted that it applies.

---

[2]"This part," the EPNA, also includes the use of mediation and "fact-finding/advisory arbitration" as part of the process of negotiation toward an agreement, Tenn. Code Ann. § 49-5-613(b), and describes the role and procedure for any such "arbitrator."  Tenn. Code Ann. § 49-5-613(c).  Therefore, we interpret the "selected for a purpose, and in a manner consistent with this part" language as referring to the two different roles envisioned for persons called "arbitrators."

[3] For example, the Association relies on *Dale Supply Co. v. York Internat'l Corp*., No. M2002-01408-COA-R3-CV, 2003 WL 22309461 at *4 (Tenn. Ct. App. Oct. 9, 2003).  *Dale* was decided under the Federal Arbitration Act, as were *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 357 (Tenn. Ct. App. 2001) and *Frizzell Constr. Co. Inc., v. Gatlinburg, L.L.C.*, 9 S.W.3d 79 (Tenn. 1999).  Other Tennessee cases similarly holding that all doubts should be resolved in favor of arbitration were decided under the Tennessee Uniform Arbitration Act.  *See, e.g.*, *Merrimack Mut. Fire Ins. Co. v. Batts,* 59 S. W. 3d 142 (Tenn. Ct. App. 2001); *Wachtel v. Shoney's Inc.,* 830 S.W. 2d 905, 908 (Tenn. Ct. App. 1991).

[4]In its brief, the Association acknowledges that the Tennessee Arbitration Act does not apply and that some of the cases it relied upon arose under that Act.

Consequently, we find authority that is based on either state or federal statutes on arbitration, including holdings regarding the role of the courts in reviewing or enforcing agreements to arbitrate, non-controlling and of little relevance.[5] In the case before us, however, we need not resolve the question of what principles apply when courts are called upon to resolve disputes over arbitration agreements in locally negotiated agreements under the EPNA, as important as that question may be for future disputes.

If the determinative question in this appeal were whether the parties agreed to arbitrate the dispute over the non-renewal of Mr. Wade's employment contract, we would apply general contract principles. In the absence of statutory guidelines, we would usually look to the parties' agreement to explain the type of dispute resolution to be followed. Private parties may agree to resolve their disputes in any legal way they choose. They are not limited to formal methods of dispute resolution recognized and defined by statute or rule, such as arbitration, mediation, or other methods described in Rule 31 of the Tennessee Supreme Court Rules. Instead, private parties may agree on "any mutually satisfactory procedure that is not illegal or contrary to public policy." *Team Design v. Gottlieb*, 104 S.W.3d 512, 517 (Tenn. Ct. App. 2002).[6] Of course, a local board of education is not

---

[5]We are aware that appellate courts in this state have not consistently taken this position. In some prior cases, in fact, our courts have quoted and applied some of the generally accepted rules regarding court review of arbitrations and arbitration agreements. *See, e.g.*, *Rhea-Dayton Educ. Ass'n v. Rhea County Bd. of Educ.*, No. 03A01-9401-CH-00021, 1994 WL 413180, *2-3 (Tenn. Ct. App. Aug. 9, 1994) (relying on a provision of Tennessee's version of the Uniform Arbitration Act for the standard under which a court may vacate an arbitrator's award and relying on non-EPNA cases applying that standard). In a footnote in *Marion Co. Bd. of Educ. v. Marion Co. Educ. Ass'n*, 86 S.W. 3d 202 (Tenn. Ct. App. 2001), this court stated it did not disagree with the argument that courts are limited in addressing the merits of a grievance submitted to arbitration, which argument was based on cases applying federal or state statutes. *Id.* at 213 n. 14. However, we went on to explain that we did not view the question before us as whether the employee's transfer was subject to arbitration, or the merits of the transfer, but, instead the question was whether the provisions in the locally negotiated agreement were beyond statutory authority and unenforceable. *Id.* Similarly, in *Lawrence County Educ. Ass'n.*, the Court relied upon Tenn. Code Ann. § 29-5-313, accurately describing that provision as part of the Uniform Arbitration Act, for the proposition that courts may vacate an arbitrator's decision when the arbitrator exceeds his powers or goes beyond the scope of authority established in the arbitration agreement. 244 S.W.3d at 318-19. While the Court determined that an arbitrator's award that interfered with a director's authority to appoint coaches was subject to being vacated as exceeding the arbitrator's powers, *id.*, there are legal bases other than the arbitration statutes for a court declining to enforce an agreement in a way that contravenes statutes. In each of these three opinions, there is no indication the court was made aware of the statutory exclusion of arbitrations under the EPNA from coverage of Tennessee arbitration statutes. In one case, however, the court was clearly aware of Tenn. Code Ann. § 49-5-602(1) and considered it. In *Metro. Nashville Educ. Ass'n v. Metro. Bd. of Public Educ.*, No. M2005-00747-COA-R3-CV, 2006 WL 2619982 (Tenn. Ct. App. Sept. 12, 2006) (perm. app. granted and case remanded for reconsideration in light of *Lawrence County Educ. Ass'n*), this court declined to agree that Tenn. Code Ann. § 49-5-602 limited the court's function to enforcing an arbitrator's decision where the parties agreed to final and binding arbitration, *id.*, at *4, but also declined to hold that arbitration pursuant to an EPNA agreement is subject to common-law standards for review of arbitration agreements. *Id.* at *5. Instead, the court held that courts could decide, as a "gateway" issue the validity or applicability of an agreement to arbitrate, *id.*, and that title 49 anticipates, at a minimum, judicial review of the permissible scope of the collective bargaining agreement. *Id.,* at *4.

[6]The alternative to applying contract principles would be to apply common law regarding arbitration agreements. Prior to the adoption of statutes establishing a policy favoring arbitration, the common law did not indicate a preference for enforcing agreements to arbitrate or any limitations on the courts in interpreting such agreements. To the contrary,

-7-

a private party but, instead, is a statutorily-created local government entity. That status requires a different preliminary inquiry.

We believe the issue to be resolved in this appeal is whether the locally negotiated agreement can be interpreted or applied to require binding arbitration of a decision not to renew a probationary teacher's employment contract where statutory and other authority reserve that decision to the broad discretion of local school officials.

## IV. LIMITATIONS ON PROVISIONS OF LOCALLY NEGOTIATED AGREEMENTS

The Association argues that this court's role is limited to determining whether the parties herein agreed to arbitrate.[7] We disagree in this case.

Local boards of education are creatures of state statute, and their authority is limited to that explicitly bestowed on them. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001) (applying Dillon's Rule, which "is a canon of statutory construction that calls for the strict and narrow construction of local government authority.") That narrow construction applies to a local government's authority to contract. *Arnwine v. Union County Bd. of Educ.*, 120 S.W.3d 804, 809 (Tenn. 2003) (holding that school boards have no statutory authority to enter into multi-year contracts with "assistant superintendents" because they have no authority to enter into such contracts with teachers). If there is any fair doubt as to whether a local governmental entity, such as a board of education, possesses a particular authority, courts should resolve that doubt against the existence of the authority. *S. Constructors, Inc.*, 58 S.W.3d at 710.

Tennessee Code Annotated § 49-5-612(c), quoted above, which authorizes the inclusion in a locally negotiated agreement of a provision for final and binding arbitration, does not address the substantive terms that may be included in an agreement to arbitrate. Further, it cannot be considered a blanket authorization for boards of education to agree to arbitrate any or all disputes or for the

---

courts were frequently hostile to arbitration and, under pre-FAA common law, parties could revoke an agreement to arbitrate at will. *See* 6 Bruner & O'Connor Construction Law § 20.2; 4 Am. Jur. 2d Alternative Dispute Resolution § 11. In *Metro. Nashville Educ. Ass'n*, this court noted that the trial court had applied *Bright v. Ford*, 58 Tenn. (11Heisk) 252 (1872), as establishing the common law in this state for court review of arbitration awards. 2006 WL 26199982 at *3. As explained in this opinion, we need not resolve the question of what standards to apply in lieu of those established in statute or opinions based on statute.

[7]We point out that the Association's argument that we must apply that limited scope of judicial inquiry relies on authority based on arbitration statutes, which, as discussed earlier, are not controlling in this case. However, the Association asserts that the general principle they advocate remains the same whether the case is decided under the Tennessee Arbitration Act, the National Labor Relations Act, the Railway Labor Act, or the Federal Arbitration Act. We have been shown no basis for the application of any of those statutes to the locally negotiated agreement that is before us. This court has previously declined to resort to authority interpreting federal statutes in cases involving an agreement under the EPNA, even as persuasive authority. *See Blount County Educ. Ass'n v. Blount County Bd. of Educ.*, 78 S.W.3d 307, 317 n.5 (Tenn. Ct. App. 2002); *Hamblen County Educ. Ass'n v. Hamblen County Bd. of Educ.*, 892 S.W.2d 428, 432 n. 8 (Tenn. Ct. App. 1994).

inclusion of delegation to an arbitrator any or all questions regarding the administration of local school systems.

In the EPNA the legislature has set out the general topics or subject matter that must be negotiated, describing them as "conditions of employment." Tenn. Code Ann. § 49-5-611(a). They include: (1) Salaries or wages; (2) Grievance procedures;[8] (3) Insurance; (4) Fringe benefits, but not to include pensions or retirement programs of the Tennessee consolidated retirement system; (5) Working conditions; (6) Leave; (7) Student discipline procedures; and (8) Payroll deductions. *Id.* Additionally, the parties may, but are not required to, agree to "discuss other terms and conditions of employment in service." Tenn. Code Ann. § 49-5-611(b). However, just because a general topic or subject matter is properly included in a locally negotiated agreement does not mean that any particular provision, or proposal as the legislature terms it, can be included or enforced.

To the contrary, the legislature has expressly limited the terms of any locally negotiated agreement by stating that the scope of such agreement shall not include proposals contrary to:

(1) Federal or state law or applicable municipal charter;
(2) Professional employee rights defined in this part; and
(3) Board of education rights contained in this title.

Tenn. Code Ann. § 49-5-612(a). Further, the legislature did not intend, by adoption of the EPNA, to alter the assignment of duties made elsewhere in statutes pertaining to local administration of schools. *Marion County Bd. of Educ. v. Marion County Educ. Ass'n.*, 86 S.W.3d 202, 208 (Tenn. Ct. App. 2001). The legislature has made that intent plain, stating that the "rights and responsibilities of boards of education, directors of schools and professional employees as contained in this title are not statutorily modified or repealed by this part." Tenn. Code Ann. § 49-5-604.

It is the role and the duty of the courts to determine the scope of authority of a local school board. *Arnwine*, 120 S.W.3d at 807-08. Similarly, this court's role includes determining whether a specific provision is within the authorized scope of a locally negotiated agreement and whether a provision or combination of provisions can be enforced if the result is contrary to statute. *Marion County Bd. of Educ.*, 86 S.W.3d at 212-13 (holding that a provision in a locally negotiated agreement could not be enforced if it was beyond statutory authority and examining the relevant statutes); *Metro. Nashville Educ. Ass'n*, 2006 WL 2619982, at *4 (stating that the statutory scheme "anticipates, at minimum, judicial review of the permissible scope of the agreement"); *see also Blount County Educ. Ass'n*, 78 S.W.3d 307 (interpreting provisions of the EPNA to determine what topics were mandatory subjects of negotiation and which were permissive); *Heatherly v. Campbell County Bd. of Educ.*, 2005 WL 562752, at *3 (holding automatic renewal clause of contract between director and board unenforceable as beyond the authority of the board because the statute allows a renewal of a contract with a director, but not an extension).

---

[8]While the parties must negotiate grievance procedures, there is no requirement that they agree to binding arbitration as part of those procedures.

It is important to distinguish between general subjects that are authorized for negotiation and specific terms, or more precisely the interpretation and application of those terms. Any provision, regardless of general subject matter, that is contrary to state law or contrary to rights given by statute to local school administrators is beyond the authorized scope of a locally negotiated agreement and is unenforceable. Further, neither the courts nor an arbitrator can interpret or apply a provision, or a combination of provisions, in a way that produces a result contrary to statute.

The Tennessee Supreme Court's recent opinion in *Lawrence County Educ. Ass'n v. Lawrence County Bd. of Educ.*, 244 S.W.3d 302 (Tenn. 2007), reaffirms that courts may and must determine whether a provision in a locally negotiated agreement is consistent with the statutes governing such agreements and those governing local administration of schools. The Court stated that a primary issue in that case was "whether transfer authority over school personnel is a proper subject of negotiation in the collective bargaining process." *Id*. at 309. Thus, it is clear that court inquiry into a provision of a locally negotiated agreement to determine whether it is within the board's authority or contrary to statute is appropriate, since a provision outside that authority or contrary to statute cannot be enforced and cannot be interpreted or applied by an arbitrator or a court in a way that contradicts statute. Additionally, while the Court determined that teacher transfers were appropriate subjects for the locally negotiated agreement, it determined that, regardless of the language of the locally negotiated agreement, coaching and other assignments that do not require a license are not subject to the collective bargaining process because of the wording of specific provisions of the EPNA. *Lawrence County Educ.* Ass'n, 244 S.W.3d at 317-18.

The Association maintains, however, that "the very essence of the EPNA is to authorize contractual modifications of rights and responsibilities of the parties." In other words, the Association asserts that the board may contractually limit its statutory authority or that of the director of schools (specifically that regarding renewal of contracts with probationary teachers), delegate its statutory decision-making duties, give up its statutory rights, or create rights or remedies for professional employees that do not exist by statute.[9]

Whether that position is correct is the fundamental issue in this case. As explained below, a non-tenured teacher whose employment is not renewed has no cause of action in the courts of this state, and courts will not examine the reasons, or lack thereof, of such a decision by a board of education and director of schools. The Association's position is that a locally-negotiated agreement can create additional restrictions on a decision not to renew a non-tenured teacher's contract and that an arbitrator can enforce those restrictions. Presumably, that would include an arbitrator decision to renew the employment contract. Thus, an arbitrator, not the director of schools or the local board of education, could decide who taught in the local schools.

---

[9]Necessarily, that argument assumes that the board may expand its authority to contract when it comes to a locally negotiated agreement.

We do not believe the law allows that result. In *Lawrence County Educ. Ass'n v. Lawrence County Bd. of Educ.*, the Court held that an arbitrator's decision cannot be enforced in contravention of statutes governing local administration of schools, 244 S.W.3d at 318, and that an arbitrator interpreting a locally negotiated agreement could not intercede in the director of schools' authority to appoint coaches because that authority is granted by statute to the director. *Id.* at 318-19. Thus, while the Court found that transfers might appropriately be included in a locally negotiated agreement, it clearly found that such an agreement could not be interpreted to give statutory duties of a local school official to an arbitrator.

## V. ENCROACHMENT ON DUTY OF DIRECTOR OF SCHOOLS

In this appeal the Board has argued that the duty and authority to decide not to renew an untenured teacher's contract lies with the director of schools and, consequently, an agreement between the Board and the Association cannot limit or modify those powers or delegate them to an arbitrator, relying on the holding in *Marion Co. Bd. of Educ. v. Marion Co. Educ. Ass'n*, 86 S.W. 3d 202 (Tenn. Ct. App. 2001). For two reasons, we find this argument unavailing.

First, certain holdings in the superceding decision in *Lawrence County Educ. Ass'n*. limit the Board's argument. In that opinion the Court held that the legislature's language that "transfers shall be acted upon in accordance with board policy and any locally negotiated agreement" compelled it to conclude that the authority of the director to transfer tenured teachers was subject to board of education policy and the terms of the locally negotiated contract. 244 S.W.3d at 313. Much of the reasoning in *Lawrence County* involved the relationship and authority of the board and the director of schools as to transfer decisions. The Court concluded that the legislature had "confirmed the traditional powers of the board of education" with regard to transfers. *Id.* at 314.

The duty of the director to non-renew personnel is also subject to the requirement that it be "consistent with locally negotiated agreements." Tenn. Code Ann. § 49-2-301(b)(1)(EE).[10] Further, Tenn. Code Ann. § 49-2-301(b)(1)(HH) provides: "[a]ll actions of the directors or their designees shall be consistent with the existing board policies, rules, contracts and regulations."

Second, the question of division of authority between the board and the director is answered, in the context of a decision not to reelect a probationary teacher, by relevant statutes. While it is true that statutorily it is the duty of the director of schools to "non-renew . . . all personnel," Tenn. Code

---

[10]Specifically Tenn. Code Ann. § 49-2-301(b)(1)(EE) provides:

> It is the duty of the board of education to assign to its director of schools the duty to:
>
> (EE) Within the approved budget consistent with existing state laws, board policies and locally negotiated agreements covering licensed personnel, to employ, transfer, suspend, non-renew and dismiss all personnel, licensed or otherwise, except as provided in § 49-2-203(a)(1) and in chapter 5, part 5 of this title. Nothing in this subdivision shall be construed to alter, diminish, or supersede the Education Professional Negotiations Act, compiled in chapter 5, part 6 of this title.

Ann. § 49-2-301(b)(1)(EE), and to "notify such teachers [eligible for tenure] of their failure of reelection pursuant to § 49-2-301(a)(J)," the local board of education is also given a role in the decision not to renew or reelect. Any notice of a failure of reelection must include "a statement of prior authorization by a majority vote of the membership of the board." Tenn. Code Ann. § 49-5-409(b)(1).

Additionally, a local board of education may choose to provide notice "to probationary teachers of specific reasons for failure of reelection pursuant to this title." Tenn. Code Ann. § 49-2-203(b)(8). Where a board chooses to exercise that authority and provide such notice, the teacher must be given, upon request, "a hearing to determine the validity of the reasons given for failure of reelection" and a written decision from the board "regarding continued employment of the teacher." *Id*.[11] Therefore, a board has statutory authority to grant itself the right to review a decision not to renew a probationary teacher's employment. Consequently, the Board's argument herein that a locally negotiated agreement cannot encroach on authority statutorily granted to the director of schools is unpersuasive in this context.

## VI. LAW GOVERNING NON-RENEWAL OF PROBATIONARY TEACHERS

Mr. Wade was a non-tenured teacher whose employment was not renewed pursuant to and in accordance with Tenn. Code Ann. § 49-5-409(b). Under that statute, teachers "in service" shall continue in such service until they receive written notice of their dismissal or "failure of reelection." Tenn. Code Ann. § 49-5-409(a). To be effective, a notice of non-renewal (or failure of reelection) must be received prior to April 15 to be applicable to the next school year. Tenn. Code Ann. § 49-5-409(b). Essentially, teachers are employed on renewable one-year contracts, consistent with the school year. *Arnwine*, 120 S.W.3d at 808 (holding that the General Assembly did not intend to grant local school boards the authority to enter into multi-year contracts with teachers). Mr. Wade had been employed for three one-year terms pursuant to three contracts between himself and the board of education. *Cannon Co. Bd. of Educ. v. Wade*, 178 S.W.3d 725, 728 at n. 1 (Tenn. Ct. App. 2005).

The non-renewal of Mr. Wade's contract also resulted in his failure to obtain tenure.[12] At the time in question, the statutes governing tenure included a provision in Tenn. Code Ann. § 49-5-504(b) that stated:

> Upon completion of the probationary period, any teacher who is reemployed or
> retained in the system is entitled to the tenure status for which such teacher is

---

[11]The statute includes certain provisos, including that: (D) Nothing contained herein shall be construed to grant tenure or the expectation of continued employment to any person. *Id*. The record before us does not include the notice sent to Mr. Wade, so we do not know if this section applies, and the parties have not addressed it.

[12]Although the denial of tenure is not explicitly raised in the grievance, there is a possibility that Mr. Wade would attempt to have an arbitrator renew his contract and order that tenure be granted him on the basis of Tenn. Code Ann. § 49-5-504(b), another decision that is outside the authority of an arbitrator since state statute gives that authority to local boards. Interpreting the agreement so as to allow an arbitrator to decide tenure would be contrary to statute.

qualified by college training and licensing, provided, that the director of schools shall notify the board prior to reelection by the board that the teacher, if reelected, will attain tenure status.[13]

The director of schools has the duty to "recommend to the board teachers who are eligible for tenure or notify such teachers of their failure of reelection pursuant to § 49-5-409." Tenn. Code Ann. § 49-2-301(b)(1)(J). The local board of education has the duty to "elect, upon the recommendation of the director of schools, teachers who have attained or are eligible for tenure . . . and make written contracts with such teachers." Tenn. Code Ann. § 49-2-203(a)(1).

Before tenure can be conferred, a teacher must meet all the statutory requirements of Tenn. Code Ann. § 49-5-503, and the director of schools must either recommend the teacher for tenure or affirmatively inform the board of education of the teacher's eligibility for tenure when recommending renewal of employment during the third year of probation. *Bowden v. City of Memphis*, 29 S.W.3d 462, (Tenn. 2000); *Ray v. Bd. of Educ. of Oak Ridge Schools*, 72 S.W.3d 657, (Tenn. Ct. App. 2001); *Fulks v. Watson*, 2001 WL 673573, at * 3 (Tenn. Ct. App. June 8, 2001) (no Tenn. R. App. P. 11 application filed).

By statute, a tenured teacher can be discharged from employment only for specified causes, set out in Tennessee Code Annotated § 49-5-511(a), and only after written notice and a formal hearing. *See McKenna v. Sumner Co. Bd. of Educ.*, 574 S.W.2d 527, 529 (Tenn. 1978); *Snell v. Brothers*, 527 S.W.2d 114, 116 (Tenn. 1975).

Non-tenured teachers, however, do not enjoy the same protections, since those protections arise from and are a result of a grant of tenure. *See Snell v. Brothers*, 527 S.W.2d at 116 (stating that the teacher tenure law is designed to protect tenured teachers from arbitrary dismissals); *Gibson v. Butler*, 484 S.W.2d 356, 359 (Tenn. 1972) (stating that the Teacher Tenure Act "affords protection to those who acquire tenure but none to those . . . who have not acquired it.") Thus, while a tenured teacher is ensured of renewal of his or her one-year contract, absent specific circumstances such as a reduction in force or termination of employment based on cause, a non-tenured teacher has no such

---

[13]By 2006 amendment, subsection (b) now reads:

> Notwithstanding any other provision to the contrary, upon the completion of the statutory probation period [three years], any teacher eligible for tenure status shall be either recommended by the director of schools for tenure or non-renewed; **provided, however, that the teacher cannot be continued in employment if tenure is not granted by the board of education.**

Tenn. Code Ann. § 49-5-504(b)(Supp.) (emphasis added). Because of the "notwithstanding" language, the EPNA cannot be interpreted to allow a board to delegate to an arbitrator a decision on tenure or continued employment in any non-renewals after the effective date of the amendment.

protection.[14]

Under authority interpreting existing statutes governing teacher tenure and teacher contracts, a non-tenured teacher may be dismissed without cause by written notice that the teacher has not been re-elected to teach the next school year, as long as the notice complies with the time limits set in Tenn. Code Ann. § 49-4-409. *Snell v. Brothers*, 527 S.W.2d at 116; *Malone v. Shelby Co. Bd. of Educ.*, 773 S.W.2d 256, 259 (Tenn. Ct. App. 1989). Our courts have also held that a non-tenured teacher whose employment is not renewed, *i.e.*, who is not re-elected to a teaching position during his or her probation period, has no right to judicial review of the local school administrators' decision not to renew employment. *Malone v. Shelby Co. Bd. of Educ.*, 773 S.W.2d at 259 (citing *Gibson v. Butler*, 484 S.W.2d at 359 and *Shannon v. Bd. of Educ.*, 286 S.W.2d 571 (Tenn. 1956)).

Consequently, under existing law Mr. Wade would have no recourse in the courts for the decision to not renew his employment as a teacher. The local school system would be afforded wide discretion in making a decision to non-renew and could make such a decision for any reason not otherwise prohibited by law.[15] Under his individual one year employment contract, a decision not to renew that contract was not reviewable. As we indicated in our earlier opinion in this case, one implication of sending to binding arbitration the nonrenewal of Mr. Wade's employment was the potential extension of the term of his employment contract beyond the term expressly provided in the individual contract. *Cannon Co. Bd. of Educ. v. Wade*, 178 S.W.3d at 731.

## VII. DELEGATION TO AN ARBITRATOR THE RENEWAL OF A PROBATIONARY TEACHER'S CONTRACT

Under the trial court's ruling the decision not to renew Mr. Wade's employment is subject to review by an arbitrator as a dispute over the interpretation of, application of, or compliance with certain provisions of the locally negotiated agreement. The provisions that are the basis of Mr. Wade's grievance are not provisions specifically dealing with non-renewal of untenured teachers. The parties did not include in the agreement any specific limitations on the decision not to renew a probationary teacher's contract.[16] Instead, the provisions at issue relate to procedures surrounding, and motivation for, a variety of decisions or conduct by the system administration that are described

---

[14]The non-renewal of an untenured teacher's contract is not equivalent to a failure to hire or otherwise the same as a termination or dismissal. Generally applicable rules of contract law distinguish between a failure to renew a contract and a termination of that contract during its term, and those rules apply to employment contracts.

[15]Obviously, any such decision could be challenged on the basis that it violated federal or state statutes prohibiting discrimination in employment on the basis of age, gender, or race, for example.

[16]Had they included a provision specifically limiting the broad discretion given to local school administrators as to non-renewals, the conflict with statute would be more obvious.

somewhat generally in those provisions.[17]  The Association and Mr. Wade assert those provisions apply to non-renewal decisions, thereby contractually limiting the discretion of local school administrators.

While the appellees have carefully crafted their description of Mr. Wade's grievance, the non-renewal of his employment is at the core of the grievance and triggered its filing.  Mr. Wade stated on his grievance form that the alleged violations of the agreement occurred when he received the notice that his employment contract would not be renewed.  In our first opinion in this case, this court remanded the case with the directive that the trial court should determine "whether and under what conditions the School Board would be required to submit its **decision not to renew Mr. Wade's contract to binding arbitration** under the collective bargaining agreement." *Cannon Co. Bd. of Educ. v. Wade*, 178 S.W.3d at 731 (emphasis added).[18]

---

[17]The sections of the agreement that Mr. Wade alleged were violated stated:

VI. E. "No reprisals shall be taken by the Board or administration against an employee because of his participation in a grievance." [The Board argues this does not apply because his contract was not renewed before his grievance was filed.  Mr. Wade asserts that it is an issue for the arbitrator to decide].

XXIV A.1. "The Board, in recognition of the concept of progressive improvement, shall require notification to a teacher, in writing on any alleged deficiencies, indicating expected corrections, and indicating a reasonable period of correction."

XXIV B.1. "The Board shall have the right to dismiss any employee upon sufficient proof of improper conduct, inefficient services or neglect of duty, provided that no one shall be dismissed without having been given a written due notice of charge or charges, and an opportunity for defense." [This provision applies to dismissals, not to decisions not to renew probationary employment. *See* footnote 14, *infra.* The claim based on this provision also assumes Mr. Wade's employment was not renewed for one of the enumerated reasons, but a non-renewal decision does not require cause.  Mr. Wade and the Association assert these questions should be determined by the arbitrator.]

XXV "The Association and the Board agree that there be no discrimination in the hiring, training, assignment, promotion, transfer or discipline of teachers or in the application or administration of this agreement on the basis of race, creed, color, religion, national origin, age, sex, domicile, marital status, or physical handicap.  Employees shall be equally free to become or not become members of the Association; and there will be no discrimination, intimidation, discipline or coercion by either the Board or its representatives or members of the Association or its representatives or members, against any employee because of his or her participation or refusal to participate in Association membership or activities.  Further there shall be no discrimination against any teacher because of his/her membership in the Association, his/her participation in any activities of the Association or collective professional negotiations with the Board, or his/her institution of any grievance, complaint or proceedings under this agreement, or law or otherwise with respect to any terms or conditions of employment." [There is some dispute about the applicability of this provision, and Mr. Wade and the association again assert that those are questions for the arbitrator.]

[18]Wording in some of the Association's filings confirm that the grievance involves "contractual violations that occur in the context of the non-renewal of a teacher."  The argument is that the context of the alleged violations is not significant.  We disagree when various provisions of the contract, taken together, are interpreted or applied contrary to

The arbitration provision in the locally negotiated agreement in this case is not specific as to the procedures to be used in the actual arbitration. Neither is it specific as to available remedies. It simply provides that the arbitrator's decision shall be in writing and that the arbitrator is "without power or authority to make any decision which requires the commission of an act prohibited by law or which is violative of the terms of this agreement." It further states that the arbitrator's decision is binding. It contains no limitations on the scope of relief that can be included in the decision. Submission of Mr. Wade's grievance to binding arbitration without any limitation on the scope of remedies available to an arbitrator creates the possibility that an arbitrator could make employment decisions that are assigned by statute to local school administrators. It also creates the possibility that the decision not to renew a nontenured teacher's employment would be subjected to a set of standards that is different from that employed by courts under existing law. We find no authority in the EPNA for that result. *See Arnwine*, 120 S.W.3d at 808.

In *Lawrence County Educ. Ass'n,* the Court ultimately affirmed the trial court's enforcement of an arbitrator's decision, but that affirmance in no way provides authority for the proposition that an agreement to arbitrate can be interpreted to delegate to an arbitrator the final decision on certain personnel matters that are statutorily assigned to local school officials. To the contrary, the Court made clear that its affirmance was based on the fact that the local board of education had adopted the arbitrator's decision and recommendation, stating "[i]n these unique circumstances, however, the judge upheld the arbitrator's decision not because of its correctness, but **because the BOE had unanimously approved the recommendations** . . ." 244 S.W.3d at 319 (emphasis added).[19]

Some discussion of the background in *Lawrence County* will help demonstrate the significance of the holdings in that case to the one before us. First, the arbitration agreed to in the master contract at issue in *Lawrence County* was not binding arbitration. Instead, the arbitrator's decision was merely a recommendation to the board of education, thereby retaining to the board the final decision. As the Court noted, the contract gave the arbitrator "limited remedial authority" allowing him only to "recommend" the form of relief. *Id*. at 317 n.13. In the case before us, however, the agreement calls for "binding arbitration" as the last step in the grievance procedure, coming after the board has decided the grievance.

Second, as discussed above, in *Lawrence County*, the board of education adopted the arbitrator's findings, interpretations, and recommendations, thereby conferring on the teacher-coach rights he had not been granted by the agreement. *Id*. at 319 (holding that the board's adoption of the arbitrator's interpretation gave vitality to the teacher's contract claim that otherwise did not exist). In *Lawrence County*, the Court addressed the relevant statutes "as to their effect on a tenured teacher whose coaching responsibilities **have been specifically addressed by the board**," referring to the board's adoption of the arbitrator's recommendation. *Id.* at 313 (emphasis added). In the case before us, the Board denied Mr. Wade's grievance in Step 4 of the grievance procedure.

---

statute governing the "context."

[19]The Court found that the board had the statutory authority to adopt the arbitrator's recommendations. *Id*.

Because one of the major issues raised in *Lawrence County* focused on the board's authority to limit or usurp the director's authority to transfer teachers, the Court's holdings in that case are based, in large part, on its determination that the board of education is "the supreme power in the school system." *Id.* at 318. The Court clearly based its decision on the facts that the board had retained final decision making on grievances and had adopted the arbitrator's findings and recommendations. A board reserving the final decision to itself, as it did in the *Lawrence County* agreement, is substantively different from an agreement delegating to an arbitrator who is not part of the local government entity charged with operation of our public schools the final decision on who is employed as a teacher and who is awarded tenure.

In *Lawrence County*, the Court found that transfers of tenured professional employees were permissive subjects of bargaining that a board of education could, but was not required to, negotiate. 244 S.W.3d at 318. Even if non-renewal of probationary teachers were also found to be a permissive subject of negotiation and agreement, that does not end the analysis. Just because a general topic may be subject to negotiation does not mean that any term or combination of terms may be enforced if the result of application of those provisions is inconsistent with statutes. The General Assembly has limited not just subject matters appropriate to negotiation, Tenn. Code Ann. § 49-5-611, but also has prohibited any "proposal" that is contrary to state, statutory rights of professional employees, or statutory rights of a board of education. Tenn. Code Ann. § 49-5-612(a). At issue herein is the **application** of various provisions of the agreement.

Again, while a general topic may be suitable for inclusion in a locally negotiated agreement, no specific term may be applied contrary to statute. For example, while professional employee working conditions are proper subjects of negotiation and agreement, a term in a locally negotiated agreement falling within that general subject matter could not be interpreted or applied to eliminate tenure or the protections afforded by that status because of existing statutes on tenure. Similarly, a provision of a locally negotiated agreement could not be applied to allow teachers fewer working hours than are necessary to provide the minimum number of hours of instruction per school year in contravention of state statutory requirements, even though work hours are working conditions.

In *Arnwine*, the Court determined there was no statutory authority for a local board to enter into multi-year contracts with teachers. 120 S.W.3d at 808. No term or provision of a locally negotiated agreement could be applied to grant that authority to school boards. The point is that a locally negotiated agreement's terms cannot be interpreted or applied in a way to achieve a result that is outside the statutory authority, regardless of whether that term could be classified under one of the enumerated authorized general subjects for negotiation.

In the case before us, the agreement provides for binding arbitration without limitation on remedies, and the grievance is based on provisions not directly addressing non-renewals of probationary employment. These provisions cannot be enforced or applied to delegate to an

arbitrator the decision of whether a probationary teacher's one-year contract should be renewed.[20]

In their appellate brief, the Association and Mr. Wade assert that the arbitration provision is an agreed contractual modification of the statutory rights of the board of education or director of schools and that such modifications are not only allowed but are the essential purpose of the EPNA. We respectfully disagree. While private parties have freedom to agree to almost any legal term, including a dispute resolution method, local school administration, employment in local schools, and even the collective bargaining process are governed by state statute. Statutory provisions cannot be rendered ineffective by contract, and contracts may not be enforced to effectuate a result that is contrary to statute.

## VIII. CONCLUSION

Accordingly, we conclude that the question of the non-renewal of Mr. Wade's employment contract cannot be subjected to binding arbitration. Costs of this appeal are taxed to the appellees, Goldy Wade and the Cannon County Education Association, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

---

[20]We do not, and cannot, address the availability of remedies other than renewal of employment and its concomitant potential for grant of tenure.